*81
 
 Pearson, J.
 

 It was held in
 
 Dickson
 
 v
 
 Jordan,
 
 11 Ire, 166, that no warranty of quality is
 
 impliedin
 
 the sale of goods. An attempt is made to distinguish the case, as it now comes up, because it appears now, no price was agreed on, whereas before, it was stated that
 
 “
 
 the rope” was sold at the price of 13 3-4 cents per pound. No stress was laid, in the opinion, on the fact, that there was an agreed price, and the circumstance that no price was
 
 expressly
 
 agreed on, cannot distinguish this case, and take it out of the general principle, then announced.
 

 If a defendant is’not allowed to abate the amount of damages, for a breach of contract in failing to pay for goods sold and delivered, when the price was agreed on, by' proof of their inferior quality, it would be singular, if he was allowed to do so, because the price had not been expressly agreed on.
 

 It was said,
 
 there
 
 the action was on an express contract;
 
 here,
 
 it is on an implied contract, and, as the plaintiff must declare on the “
 
 quantum
 
 valebat,” the question of value is open. We deny the premises from which this conclusion is drawn. The contract, in both cases, ismn express one — ■ the only difference being, that in one, the parties fix on the price ; in the other, leave it to be inferred from the circumstances ; and the inference is, that the one agreed to take, and the other to give, the selling price, or (as it is termed in the case) the market price. If.the vendor demands more, it is his duty to make it known — if the vendee is not willing to give it, he must say so. Silence is taken for consent to give and take the market price. Neither party is allowed to take advantage, from the fact, that the dealing was upon this mutual understanding.
 

 A Doctor is sent for, and attends day and night upon a slave. It would be singular, if the owner when sued for the services, should insist, “ no price was agreed on,” the declaration is upon a
 
 “quantum
 
 meruit,” and I may show, in abatement of the damages, that the slave died, and so the
 
 *82
 
 services were of no value. If a carpenter works day after day, according to instructions, and the. building is of no use, because of a defect in the plan — can the employer on that ground be allowed an abatement from the wages ordinarily demanded, and paid to carpenters?
 

 From the argument, and the cases cited, (those referred to in 2 Greenleaf 136, note 4,) we presume the counsel has fallen into a misapprehension, by not adverting to ihe dis2 tinction, between a case like the present, where the contract is express, and an action on a contract implied by law — as when one agrees to build a house according to certain specification for a given sum, but does not build the house according to contract, and therefore connot maintain an action on it. Still if the other party takes any benefit from his labor and materials,
 
 the law will imply,
 
 from his doing so,
 
 a promise de bono et
 
 quo, to pay what the labor and materials are worth to him. Here the question of value is open; with this restriction, however, that the price agreed on is the “standard” and cannot be exceeded, and the rule is, if the house, built according to contract, be worth the sum agreed on,' how much should be allowed for it, built as it is ? In such a case, it would be out of the question to allow the plain tiffto recover according to workman’s wages, or the rates of the trade, so much per square; for it may be, the defendant would not have had the house built, but for •the very low price at which the plaintiff agreed'to do it.
 

 Per Curiam, Judgment affirmed.